Filed 3/12/24  Leisy v. Weil CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| KATE LEISY,<br><br>        Plaintiff and Respondent,<br>v.<br>AARON WEIL,<br><br>        Defendant and Appellant. | A164066<br><br>(Alameda County<br>Super. Ct. No. RG21096171) |

Aaron Weil interviewed for a job at Allbirds, a sustainable shoe and apparel company, but Allbirds declined to offer him a position.  One year later, Weil launched an aggressive online campaign accusing Allbirds of stealing advertising ideas he sent to the company's recruiting team after his interviews.  Weil subsequently focused his attacks on Kate Leisy, an Allbirds designer who participated in one of his interviews.

Leisy filed a lawsuit against Weil for defamation, false light and intentional and negligent infliction of emotional distress.  The trial court denied Weil's special motion to strike Leisy's complaint under California's anti-SLAPP statute, Code of Civil Procedure section 425.16, concluding Weil's statements were not protected under the anti-SLAPP statute because they were neither pre-litigation communications nor related to a matter of public

1

interest, and that even if the statements were protected, Leisy established a probability of prevailing on her claims.[1]  We affirm.

## I.     BACKGROUND

Allbirds is best known for its minimalist and sustainable sneakers which incorporate ecofriendly materials such as recycled cardboard and plastic bottles.  In 2019, Leisy was a Senior Designer at Allbirds.

In July 2019, Weil applied for a position as a User Experience Designer in Allbirds's Digital Product team.  Although Leisy was not involved with the "user experience" elements of Allbirds's designs, she agreed to participate in the last of three interviews the company conducted with Weil to provide an additional opinion on his candidacy and as a favor to the Digital Product team.  The day after his interview, Weil sent Allbirds's recruiter a thank you note which included presentation slides with advertising ideas he developed regarding the sustainability of Allbirds's products.  For example, Weil submitted an advertising mockup for an Allbirds shoe that was labeled with an environmental impact score within a circular design.  The recruiter indicated she would forward Weil's email to Leisy and another one of Weil's interviewers, but none of the individuals responsible for the hiring decision viewed the slides at that time.  In fact, within 24 hours of the interview, Allbirds had already determined Weil was not a good fit for the role.  This fact, however, was not communicated to Weil who did not receive a rejection letter or any further correspondence from Allbirds.

Around April 2020, Weil came across an Allbirds advertisement which he believed included designs that were similar to the ideas he submitted along with his thank you note in 2019.  Convinced that Allbirds had stolen

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

his designs, Weil hired counsel to send a letter to Allbirds accusing it of design theft and demanding that the company begin "meaningful discussions" with Weil before he resorted to "any and all means" to protect his rights. The letter stated that Weil had already registered the domain www.allbirdstheft.com to tell his story publicly and expressed hope that the parties could "reach an equitable resolution before the site goes live."

In response, Allbirds informed Weil that his claims lacked merit. Among other things, Allbirds pointed out that the group of individuals responsible for the company's advertising campaign was "*entirely different*" from the individuals who interviewed Weil and received his work. Allbirds also indicated that it had used circular designs similar to the new "carbon footprint" score in prior advertising materials.

Dissatisfied with Allbirds's response, Weil began an online campaign in which he accused the company of stealing his designs, including his idea that products be labeled with a "carbon footprint" score. To this end, he launched a website titled "Allbirds Theft" at allbirdstheft.com, and created the Twitter handle @AllbirdsTheft (Twitter account) and a publicly-accessible Instagram account with the handle @AllbirdsTheft (Instagram account). Weil posted hundreds of vitriolic and occasionally profanity-laced accusations that Allbirds stole his advertising ideas and designs on his website and Twitter account.

At some point, Weil began using the Twitter account to target Leisy and accuse her of stealing his design ideas. He also used the Instagram account to follow Leisy's personal Instagram account; contacted at least 62 of Leisy's friends, family members and professional contacts on Instagram, sending many of them direct messages stating that Leisy stole his work and was a thief; and tweeted a video with his design theft accusations that tagged

Leisy's personal Twitter account.  Beyond all this, Weil tweeted messages suggesting he was tracking Leisy's online activity and the activity of her family and friends.  For example, at one point, Weil tweeted that his IP records indicated that a "person in Santa Rosa Beach" had been "visiting [his] site obsessively since 6am," and that he would "[s]ubpoena" the "IP address in Santa Rosa Beach" which had "visit[ed] the site every 30 minutes, sometimes early in the morning."

In February 2021, Weil registered two new websites: AllbirdsRapedMe.com and KateLeisyTheft.com.  The homepage for both of these websites stated: "An Allbirds designer (Kate Leisy) stole my work, product ideas, Carbon Footprint Score, Number and Label design, visual and UX design as well as historical and thematic imagery."  Weil also created another Instagram account with the handle @KateLeisyTheft.  The heading at the top of that account read: "Got raped by a designer.  Kate Leisy, the designer at Allbirds, stole my designs after I applied for a job there."  The account also provided a link to the KateLeisyTheft.com website.  That same month, Weil had people stand outside of Allbirds stores with signs that included a link to the AllbirdsRapedMe.com website.

This lawsuit followed.  In April 2021, Leisy filed a complaint against Weil alleging claims for defamation, false light, and infliction of emotional distress.  The complaint averred that Weil's harassment and attacks were baseless as carbon labeling had become a popular and growing way for many companies to market their goods, Allbirds began assigning a "carbon footprint" to its products months before Weil's first interview, Leisy did not work on the "carbon footprint" feature, and the designers who worked on the feature never met with Weil or viewed his slides.  The complaint also alleged that Allbirds informed Weil of these facts but he persisted in his online

harassment of Leisy, which led to her experiencing significant emotional distress.

Weil filed a special motion to strike each cause of action in the complaint. (§ 425.16.) He asserted that his online statements regarding Leisy's theft of his design ideas arose from protected speech under section 425.16 because Allbirds, its business practices, and its well-publicized "carbon footprint" advertising campaign were topics of public interest. Weil also contended that Allbirds garnered media attention in 2019 concerning its own allegations of idea theft against Amazon.com, and his statements constituted consumer warnings. In support, Weil proffered evidence of internet searches on major news media websites such as Bloomberg.com and CNBC.com that yielded numerous articles about Allbirds. He also submitted news articles that covered Allbirds's "carbon footprint" advertising campaign, and an article addressing Allbirds's own criticism of Amazon.com for copying its shoes. Additionally, Weil contended that Leisy could not establish a probability of prevailing on her claims because, among other things, the complaint relied on allegations that concerned only Allbirds and not Leisy herself.

In opposition, Leisy asserted that a general interest in Allbirds or issues of sustainability did not support a public interest in Weil's allegations of design theft, and Weil's statements did not qualify as consumer protection because they related to Allbirds's marketing designs and said nothing about its products or services. She also argued she would prevail on her claims because Weil's statements were false and did not constitute nonactionable opinion; Weil had no reasonable basis for believing his allegations were true; and his conduct was outrageous. In support, Leisy submitted a declaration stating that she helped interview Weil for a position that was not on her team

5

and unrelated to her job. She also indicated that her involvement in his recruitment was limited to a 30-minute video interview and the filling out of a scorecard with her thoughts about the interview. As for the slides attached to Weil's thank you email, Leisy represented that she did not even open them until Weil began his online harassment campaign. Leisy also detailed the emotional toll Weil's campaign had taken on her.

In reply, Weil asserted for the first time that his statements were pre-litigation communications directed towards getting Allbirds to resolve his claims against it. He submitted a supporting declaration attesting that he made each of his statements as a "part of [his] negotiation of claims against Allbirds." Weil indicated that he previously had to resort to "stating [his] case on social media" to get entities and individuals to compensate him for his work. As such, he contended the public communications were "intended to give Allbirds another chance to settle and make things right." He also alleged that after creating the social media account, he made "thousands and thousands" of tweets about "Allbirds [sic] actions, its IPO, related social justice issues, and related issues in Silicon Valley regarding diversity, theft, and even 'brain-rape.'"

The trial court denied the special motion to strike. It concluded Weil's statements were neither pre-litigation communications nor related to a matter of public interest. Further, the court held Leisy established a probability of success on her claims.

## II.    DISCUSSION

Weil argues on appeal that the trial court erred in denying his special motion to strike because his conduct was protected under the anti-SLAPP

6

statute and Leisy did not demonstrate a probability of prevailing on her claims.

## A. Applicable Law and Standard of Review

The Legislature enacted section 425.16 to combat "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances" (§ 425.16, subd. (a))—otherwise known as strategic lawsuits against public participation (SLAPPs). The anti-SLAPP statute provides in relevant part that any "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).)

This language creates a " 'two-step process for determining whether an action is a SLAPP.' " (*Rivero v. Am. Fed'n of State, Cnty., & Mun. Emps., AFL-CIO* (2003) 105 Cal.App.4th 913, 918 (*Rivero*).) "First, the defendant must establish that the challenged claim arises from activity protected by section 425.16." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) Section 425.16, subdivision (e) enumerates four categories of protected conduct including, as relevant here, communications made in connection with an issue under consideration by a governmental proceeding; statements or writings made in a public place or forum in connection with an issue of public interest; or any other conduct in furtherance of petitioning or free speech activity in connection with a public issue or an issue of public interest. (*Id.* at subd. (e)(2)–(e)(4).) If the defendant makes the required showing at the first step,

7

the "burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Baral,* at p. 384.)

"Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, italics omitted.)  We review de novo the grant or denial of an anti-SLAPP motion.  (*Park v. Bd. of Trustees of California State Univ.* (2017) 2 Cal.5th 1057, 1067.)

### B.    Merits of the Anti-SLAPP Motion

Weil argues he satisfied the first prong of the anti-SLAPP analysis because his statements were made in connection with an issue of public interest or, in the alternative, that they constituted pre-litigation communications.  Next, he asserts Leisy did not demonstrate a probability of prevailing on her claims because, among other things, many of his statements concerned Allbirds and not Leisy or were protected statements of opinion based on disclosed facts.  We need not reach the issue of whether the second prong of the anti-SLAPP statute was satisfied because Weil has failed to establish his statements constitute protected activity.

### 1.    Matter of Public Interest

Weil contends the anti-SLAPP statute applies because Leisy's claims arise from his online communications regarding an issue of public interest— namely, Allbirds's theft of Weil's designs for use in its "carbon footprint" advertising campaign.  More particularly, Weil asserts that Allbirds's business practices are a topic of public interest, its "carbon footprint"

8

campaign received extensive media coverage, and it is an entity in the public eye. We are not persuaded.

To come within section 425.16, subdivision (e), the speech or activity must be in connection with "an issue of public interest." (§425.16, subd. (e)(3), (e)(4).) Although the statute does not define "an issue of public interest" (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132), the "most commonly articulated definitions" focus on "whether (1) the subject of the statement or activity precipitating the claim was a person or entity in the public eye; (2) the statement or activity precipitating the claim involved conduct that could affect large numbers of people beyond the direct participants; and (3) whether the statement or activity precipitating the claim involved a topic of widespread public interest . . . [and] contribute[d] to the public debate." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898 (*Wilbanks*).)

Here, the statements giving rise to Leisy's defamation and emotional distress claims do not come within these definitions. Leisy averred that Weil published statements on his publicly-available websites— KateLeisyTheft.com and AllbirdsRapedMe.com—that accused her of raping him and stealing his designs after he applied for a position at Allbirds. This issue is not one of public interest. The record is devoid of any evidence that Leisy, who is the subject of the statements, is a person in the public eye. Further, any design theft she may have committed would not affect large numbers of people, and finally, there is no indication the design features used in Allbirds's "carbon footprint" campaign is a topic of widespread public interest or the subject of a public debate that was furthered by Weil's conduct. (See, e.g., *Rivero, supra,* 105 Cal.App.4th at p. 924 [holding that statements regarding plaintiff's supervision of eight custodians did not relate

9

to an issue of public interest where plaintiff previously received no public attention or media coverage and the only individuals affected by the situation were plaintiff and the eight custodians].)

Weil attempts to rely on Allbirds's status as a public entity to demonstrate his statements involved an issue of public interest. This approach is misguided as the statements giving rise to Leisy's claims are directed towards Leisy herself and not the company as a whole. Further, even if the subject statements related to *Allbirds's* theft of Weil's design for its "carbon footprint" advertising campaign, there is no evidence of widespread public interest in this issue or of anyone who would be affected by the theft apart from Weil himself. In this regard, we agree with Leisy that though Weil submitted news articles pertaining to Allbirds's use of "carbon footprint" labels on its products, any public interest in the broader issue of carbon labeling is not tantamount to a public interest in the specific design used in a particular labeling campaign. (See, e.g., *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 616 [public interest in a city's plan to possibly build a NFL sports stadium did not equate to a public interest in the issue of who should represent the city in its negotiations with the NFL].)

Next, Weil asserts his statements were protected consumer warnings because they contributed to the discussion of a matter of public interest— namely, the business ethics of Allbirds. This argument is not well taken.

Though Weil is correct that consumer information is generally viewed as information concerning a matter of public interest when it affects a large number of persons (see *Wilbanks, supra,* 121 Cal.App.4th at p. 898), he erroneously focuses again on the business practices of *Allbirds* when the statements giving rise to Leisy's claims relate only to *her* purported theft of Weil's design ideas after she interviewed him. Nothing in the record

10

indicates that Leisy is a business entity or that she has any customers. As such, the facts here are starkly different than those in the consumer information cases relied on by Weil, such as *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138, 1145, *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 694, *ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1008, *Gilbert v. Sykes* (2007) 147 Cal.App.4th 13, 23, and *Wong v. Jing* (2010) 189 Cal.App.4th 1354, 1367, where the plaintiff either owned the business, was a business, or provided services to the public.

Lastly, Weil asserts his online campaign was not merely about a private dispute, but was a public protest connected to an issue of public interest. In support, he relies on *Geiser v. Kuhns* (2022) 13 Cal.5th 1238 (*Geiser*), where the California Supreme Court reversed an appellate court determination that a protest outside of a housing developer's home concerned only a private dispute. Weil's reliance on *Geiser* is misplaced. There, two homeowners whose house was foreclosed on by a development company sought the assistance of an organization whose mission was " 'to save homes from foreclosures' " and to " 'fight against the displacement of long-term residents.' " (*Id.* at pp. 1243–1244.) Activists with this organization engaged in various forms of public protest to help the homeowners repurchase their home. (*Id.* at p. 1244.) These efforts culminated in a demonstration outside the home of the CEO of the development company where 25 to 30 people gathered to protest the unfair and deceptive practices used by the company to acquire the property and evict the homeowners. (*Id.* at p. 1245.) The Court of Appeal held this activity was not protected because, among other things, the motivation for the protests were purely personal and did not address any societal issues of residential displacement. (*Id.* at pp. 1246–1247.) Our high court disagreed. (*Id.* at p. 1243.)

11

In reversing the Court of Appeal's decision, the California Supreme Court set forth the two-step inquiry it established in *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133 (*FilmOn*) for determining if activity from which a lawsuit arises falls within section 425.16, subdivision (e)(4)'s protection of "other conduct" in furtherance of free speech or petitioning activity in connection with a public issue or an issue of public interest. (*Geiser, supra*, 13 Cal.5th at p. 1243.) Under that framework, "first, we ask what public issue or issues the challenged activity implicates, and second, we ask whether the challenged activity contributes to public discussion of any such issue." (*Ibid.*) With respect to the first step, *Geiser* stated: "*FilmOn*'s first step is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute. Only when an expressive activity, viewed in context, *cannot reasonably be understood* as implicating a public issue does an anti-SLAPP motion fail at *FilmOn*'s first step." (*Id.* at pp. 1253–1254, italics added.) Our high court then concluded that in the matter before it, the first step was satisfied because an objective observer could reasonably understand the sidewalk protest in front of the developer's home to implicate the public issues of unfair foreclosure and residential displacement practices, even if it stemmed from the homeowners' personal interest in regaining their property. (*Id.* at pp. 1254–1255.) Among other things, the court noted that an observer of the protest stated in his declaration that the purpose of the demonstration was to protest unfair and deceptive practices used by the development company. (*Id.* at p. 1251.) Further, the involvement of a housing advocacy organization in the protest clearly indicated the organization viewed the homeowners' situation as an opportunity to further its mission, and there were 25 to 30 other individuals

12

involved in the protest who had no apparent connection with the homeowners.  (*Ibid*.)

Here, in contrast, neither the speech nor the context in which it arose suggests that public issues were involved.  Though Weil attempts to frame his online communications and physical protests as implicating Allbirds's business practices as a whole, an objective observer of the statements he posted on his Twitter account and the websites attacking Leisy make clear that what is at issue is Weil's personal grievance that Leisy and/or Allbirds stole his design and work.  For example, relative to Allbirds, Weil tweeted messages such as: "The idea for the carbon footprint score came from me!  THEY RAPED AND ROBBED ME" and "I applied for a job at @allbirds and they raped me, then robbed me.  Stole my design and work!  #rapedmybrain."  With respect to Leisy, the connection to Allbirds's business practices is even more attenuated, with Allbirds being referenced only in the context of employing Leisy, who purportedly stole Weil's work.

We therefore conclude that Weil's accusations of Allbirds's and/or Leisy's design theft cannot reasonably be understood as implicating a public issue.  Further, any attempt by Weil to connect this grievance to any broader issues relating to the ethics of Allbirds's business practices is a textbook example of a "synecdoche theory" of public interest whereby a defendant attempts to define his or her narrow dispute by its slight reference to a broader public issue, a practice the California Supreme Court has expressly frowned upon.  (See *FilmOn*, *supra*, 7 Cal.5th at p. 152; *Rand Resources, LLC v. City of Carson*, *supra*, 6 Cal.5th at p. 625 [rejecting "fleeting or tangential" connections between challenged conduct and issue of public interest because "[a]t a sufficiently high level of generalization, any conduct can appear rationally related to a broader issue of public importance"].)

13

In sum, Weil has failed to establish Leisy's claims arise from an issue of public interest under section 425.16, subdivision (e)(3) or (e)(4).

## 2. Pre-Litigation Communication

Weil additionally contends his communications were protected because they were part of his pre-litigation efforts to resolve his claims against Allbirds. In support, he points out that many of the communications alleged in the complaint directly reference impending litigation, including: "Hi, nice to meet. I was raped, robbed, and threatened with false charges by @allbirds. #rapedmybrain #stolemywork"; "You lie under oath, you go to jail"; "Subpoena of IP address in Santa Rosa Beach. So many visits, has to be related or the guilty party"; and "Allbirds . . . had over 6 months to settle . . . Instead, [they] promote[d] the thief, gasli[t] and threaten[ed] to sue . . . for extortion." Weil's argument lacks merit.

Section 425.16, subdivision (e)(2) protects statements made in connection with an issue "under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." This subdivision's protection extends to communications concerning the subject of the dispute and made " 'in anticipation of litigation "contemplated in good faith and under serious consideration." ' " (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.) Examples of protected prelitigation communications include prelitigation demand letters (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1293); intent to sue notices (*CKE Restaurants, Inc. v. Moore* (2008) 159 Cal.App.4th 262, 265); and statements asserting a particular legal position and threatening litigation, followed soon thereafter by the filing of a lawsuit (*Digerati Holdings, LLC v. Young Money Ent., LLC* (2011) 194 Cal.App.4th 873, 888).

14

Weil has failed to demonstrate the communications at issue fall into these or similar categories. Nor does he establish his statements were made in anticipation of litigation against Leisy that was contemplated in good faith and under serious consideration. (See *Neville v. Chudacoff, supra,* 160 Cal.App.4th at p. 1268.) In fact, Weil does not direct us to *any* evidence in the record that he had any serious intentions to sue Leisy directly. As Leisy points out, Weil's initial demand letter from June 22, 2020 threatened public defamation, rather than a lawsuit. Specifically, he wrote: "Weil has registered the domain www.allbirdstheft.com to tell his story publicly. We hope that the parties can reach an equitable resolution before the site goes live." Further, the demand letter was not addressed to Leisy but to Allbirds, thus demonstrating that even if litigation was contemplated, it was directed towards the company and not towards Leisy herself. Additionally, Weil's statements did not assert a particular legal position and threaten litigation followed by a lawsuit. Instead, Weil messaged Leisy's friends, professional contacts and family referencing her purported theft. Finally, there were no real "intent to sue notices" to speak of when Weil registered two additional websites (AllbirdsRapedMe.com and KateLeisyTheft.com), both alleging that an "Allbirds designer (Kate Leisy) stole [Weil's] work, [and] product ideas." Rather, these behaviors and online posts continued for several months without any serious attempts by Weil to file anything in court. As such, Weil fails to demonstrate his communications were pre-litigation communications protected by the anti-SLAPP statute.

## III. DISPOSITION

The order denying Weil's special motion to strike is affirmed. Leisy is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

15

                                        LANGHORNE WILSON, J



WE CONCUR:



HUMES, P. J.



CASTRO, J.*













A164066



* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16